THOMAS ET AL v. PYNE ET AL.

1. **Guardian and Ward**: FRAUDULENT CONVEYANCE: MARSHALLING OF SECURITIES. A guardian who was insolvent conveyed certain property in trust for his wards, to whom he was indebted; pending an action by general creditors against the guardian and wards to set aside such conveyance, the wards attained their majority and settled with the guardian, accepting the property conveyed: *Held*, that they took the same subject to the rights of the plaintiffs in the action, and having failed to pursue their remedy against the guardian and his sureties their equities were inferior to those of the general creditors.

*Appeal from Benton Circuit Court.*

THURSDAY, DECEMBER 16.

THIS is an action in equity, the object of which is to subject certain real estate to the payment of judgments held by the plaintiffs against the defendant, John F. Pyne, upon the alleged ground that a conveyance of said real estate by said Pyne to certain of the other defendants was in fraud of the rights of the plaintiffs, as his creditors. There was a trial upon the the merits and a decree for the plaintiffs. The defendants appeal, and the cause stands for trial anew in this court. The necessary facts appear in the opinion.

*J. C. Traer*, for appellants.

*A. Haines, W. C. Connell, O. L. Cooper* and *J. D. Nichols*, for appellees.

ROTHROCK, J.—In the year 1874, the defendant Pyne held the record title to certain real estate, consisting principally

1. GUARDIAN and ward: fraudulent conveyance: marshalling of securities.

of lots in the city of Vinton. His wife, L. F. Pyne, held the legal title to certain lots which constituted the homestead of herself and husband. In the month of August, 1872, said L. F. Pyne executed a mortgage upon said homestead to the American Life Insurance Company, to secure a loan of $2,500, which

loan was effected at the instance and for the benefit of said John F. Pyne. In the month of August, 1874, John F. Pyne executed and delivered to said L. F. Pyne a mortgage upon certain of his real estate to indemnify her against the mortgage upon the homestead. This indemnifying mortgage was foreclosed by a decree of the Benton District Court, entered in October, 1874. There was also a personal judgment rendered for the amount in favor of said L. F. Pyne and against said John F. Pyne. No special execution has been issued upon said judgment and decree of foreclosure.

John F. Pyne was the guardian of the defendants Edward A. Pyne and Joseph S. Pyne, minors, and as such guardian he received from the sale of certain real estate of his said wards the sum of $1,000. This money was received by him in 1868. In 1867, he purchased lots three and four in Tilford's addition to Vinton, for which he paid some $300. These are the lots in controversy in this action. On the 5th day of October, 1874, he conveyed these lots to M. Woods, in trust, for the benefit of his said wards. This trust deed recites that he invested of his ward's money the sum of $350 in the purchase of said lots, and took the title in his own name. The trust declared therein is that the said trustee shall hold the said lots for the benefit of said wards, and upon their arrival at the age of twenty-one years, and making demand therefor, said trustee should convey to each the undivided half of said lots. This action was commenced January, 21, 1875, and it was tried in the court below in the month of December, 1879. Pending the action, and before September, 1879, both of said minors became twenty-one years old. On the 23d day of September, 1879, John F. Pyne filed his final account as guardian of his said wards, in which he stated that his said wards had fully ratified said conveyance to Woods, and received the said lots at a valuation of $400. The balance of the $1,000 was paid in a printing press and printing materials, and possibly some other property.

The said wards filed their vouchers with said final report,

acknowledging full satisfaction of all claims against their said guardian.

On the 22d of September, 1879, L. F. Pyne assigned said mortgage foreclosure and judgment to J. C. Traer and Geo. Horridge, who were sureties upon the said John F. Pyne's guardian's bond. The object of the assignment was to secure said assignees for advancing some $360 to pay a judgment against said John F. and L. F. Pyne, and also " as indemnity and collateral security for any and all liability they or either of them may be under, or have incurred, by reason of their suretyship on said guardian's bonds of John F. Pyne."

The evidence shows that John F. Pyne was involved at the time he made what is denominated the trust deed to Woods. All the claims of the creditors in this action had then accrued. Two of the judgments of plaintiffs were rendered on the next day after the trust deed was executed. It cannot be questioned, under the evidence, that Pyne, by the trust deed, was endeavoring to place the two lots in controversy beyond the reach of his general creditors. The claim that these lots· were purchased with the money of the wards was not true. He made the purchase and paid for the lots before he received the money of his wards. There was not, at most, before that time, to exceed seventy dollars of his wards' money in his hands. He at one time mortgaged the lots in controversy for his own debt, and afterwards paid the mortgage. In 1870 he made a sworn report, as guardian, in which he set forth that he had invested his wards' money in the lots and buildings which constituted the said homestead property. The wards, therefore, had no equity in the lots in controversy before the execution of the trust deed, which they could enforce. The trust deed, so called, was no more than a conveyance of the property to Woods to be conveyed by her to the wards when they arrived of age, provided they should demand such conveyance. They were under no obligation to accept the lots at any price. When they became twenty-one years of age they had the right to demand the money due

them from their guardian. Their security was the guardian's bond, and the sureties in the bond had protected. themselves by taking an assignment of the said judgment and mortgage foreclosure. Now, with all these facts presumably within their knowledge, the said Edward A. and Joseph S. Pyne, after this case had been pending against them for some four years, and just before the trial thereof, accepted the property in controversy at a valuation of $400, an amount much less than the real value, and released their guardian. After they arrived at the age of majority, they stood in the relation of creditors to their guardian. *Humphreys v. Mattoon*, 43 Iowa, 556. It is urged by counsel for appellant that there is no evidence that they participated with John F. Pyne in any effort to defraud the creditors of the latter. Whether there was an active participation in any fraudulent act or intent, it is not important to inquire. The decree in this case may be sustained without entering that field of investigation. The wards had the guardian's bond as security. They also had, it may be conceded, an election to take the title to the lots in controversy. Instead of resorting to the bond, they took the lots at an agreed price of $400, in defiance of a pending action by creditors to subject the lots to the payment of certain judgments. This they could not do. "The general principle is that if one party has a lien on, or interest in, two funds for a debt, and another party has a lien on or interest in only one of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of both parties, whenever it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund." Story's Eq., Sec. 633.

There are other considerations why the wards should have exhausted the security they had, rather than to attempt to wrest the property in controversy from the other creditors. The evidence shows that their money was expended in obtaining the homestead. It was so reported to the Circuit Court,

and the report was approved. The assignment of the judgment and decree of foreclosure to the sureties in the guardian's bond was, in effect, putting just so much of the proceeds of the homestead in their hands as would be necessary to repay the money of the wards, if the sureties should be compelled to pay the amount which was due from the guardian. The wards would, therefore, have recovered their money from the very property in which it was invested, and this would have been equitable. The decree of the Circuit Court will be

AFFIRMED.